UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| CHRISTOPHER UNDERWOOD, ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> MICHAEL CONYERS, et al. ) <br> ) <br> Defendants. ) | No. 1:21-cv-00685-JMS-TAB |

**ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT**

Plaintiff Christopher Underwood alleges in this civil rights suit that the defendants violated his Eighth Amendment rights when they failed to provide him a mattress, bedding, eating utensils, and hygiene products including soap, after moving him to segregated housing. Defendants have filed motions for summary judgment. Dkt. 38; dkt. 44. For the reasons below, Aramark's motion is granted and the correctional defendants' motion is denied.

**I.
Standard of Review**

Parties in a civil dispute may move for summary judgment, which is a way of resolving a case short of a trial. *See* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the Court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v.*

*Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The Court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id*. at 325.

## II.
## Factual Background

Because Defendants have moved for summary judgment under Rule 56(a), the Court views and recites the evidence "in the light most favorable to the non-moving party and draw[s] all reasonable inferences in that party's favor." *Zerante v. DeLuca*, 555 F.3d 582, 584 (7th Cir. 2009) (citation omitted).

On February 26, 2020, Mr. Underwood was moved to disciplinary segregation around 10:00 am. Underwood Deposition, dkt. 39-2 at 15.[1] None of his possessions from general population were moved with him. He had no mattress, sheets, blankets, soap, toothpaste, fork, or

---

[1] The page numbers printed on the deposition transcript differ from the page numbers of the .pdf of the transcript docketed on the Court's electronic filing system. The Court refers to the .pdf page numbers rather than the printed page numbers.

cup. *Id*. at 23, 26. The cell was completely empty except for the clothes Mr. Underwood had on. He felt like he was freezing with no sheets or blankets. *Id*. at 40.

Mr. Underwood complained about these conditions to Sergeant Locke and Lieutenant Martz. *Id*. at 27-28; 31. He complained to every officer he came in contact with from February 26, 2020, through March 5, 2020. *Id*. at 31. He complained about being cold, having no bedding, no soap, and no utensils or cup to eat or drink with. *Id*. He ate with his hands because he had no utensils, but he was unable to wash his hands between using the toilet and eating because he had no soap. *Id*. at 44. As a result, he vomited more than once. *Id*. at 43. On March 3, 2020, he submitted a healthcare request form stating that he would start a hunger strike because of the unsanitary conditions. Underwood Affidavit, dkt. 51 at 4-5.

Mr. Underwood received a mattress around 2:00 a.m. on February 27, 2020, but nothing else. Dkt. 39-2 at 34. Spending the first 16 hours without a mattress made his back hurt, so he requested Tylenol from the medical department. Dkt. 51 at 6-7. On March 3, 2020, defendant Locke brought him bedding and a spork. Dkt. 39-2 at 37.

Mr. Underwood was told that he would receive hygiene items when he was taken to shower, but there were none. *Id*. at 34; dkt 2-1 at 5. He repeatedly asked for hygiene supplies, to no avail. Sgt. Commander told him he wasn't the only inmate without them. Dkt. 39-2 at 42-43. Later, when officers came to offer him a shower, he did not go because they told him there was no soap, shampoo, toothpaste, or razors to use. *Id*. at 39, 50-51. He finally received hygiene products on the evening of March 4, 2020, and was able to wash up at the sink in his cell. *Id*. at 36, 40. He received his first shower in segregation on March 5, 2020. *Id*. As a result of his experience, Mr. Underwood suffers panic attacks. *Id*. at 47.

In a grievance response, Sgt. Locke stated:

> This Offender made complaints to Major Conyers and to Captain Mason but I do not know the extent of the complaints. This Offender never sent an informal grievance as he just asked me for my information earlier this week. When I was made aware of the situation on 03 March 2020, I contacted Officer Meyers that day and had sheets and blankets delivered. I also got with the kitchen and retrieved a spork. If I had not done these things, the Offender would STILL be sending out request forms and waiting for the items.

Dkt. 44-5 at 9. Some of the correctional defendants submitted unsworn email correspondence in support of their motion for summary judgment. Dkt. 44-6.[2] Defendant Conyers stated that he does not recall the incident, but that if he had been aware that Mr. Underwood lacked bedding and hygiene, "it would have been corrected." *Id*. at 1. Defendant Mason stated that he had no recollection of Mr. Underwood's allegations. *Id*. at 4.

Defendant Martz stated that inmates often lacked bedding and hygiene supplies when they were moved to segregation. *Id*. at 2. Hygiene totes were refilled every Monday and staff were instructed on how to "ensure they lasted the whole week." *Id*. Defendant Commander stated that the unit was short staffed, and it was difficult to fulfill his duties as a leader and fill in for staff shortages. *Id*. at 3. He further stated that Mr. Underwood's mattress and bedding should have been moved to segregation from his previous housing unit and that it was difficult to get replacement linens, in part because inmates sometimes sold their bedding.[3] *Id*.

Mr. Underwood argues that defendant Aramark is responsible for his lack of eating utensils and cup while in segregation. Brandon Miller, the Food Services Director for Aramark at

---

[2] The Court notes that the correctional defendant gave the exhibits to their summary judgment motion generic titles, such as "Exhibit 1." Local Rule 5-6(a)(2) provides that exhibits to a main document must be "given a title which describes its content." Counsel should take care to follow this Rule in future filings.

[3] Nothing in the record suggests that Mr. Underwood sold or destroyed any of his bedding.

Pendleton attests that Aramark cannot deliver replacement cups and sporks directly to inmates in segregation, that Aramark was not aware that Mr. Underwood lacked a cup and spork in segregation, and Aramark was required by the Indiana Department of Correction to implement the use of reusable cups and sporks. Miller Declaration, dkt. 39-1. Mr. Underwood argues that Mr. Miller is lying about Aramark's lack of awareness of his situation. Dkt. 47 at 7. He bases his argument on the fact that he sent several request slips about the issue, but he does not know if Aramark received them. Dkt. 47 at 5-8, annotating deposition transcript, dkt. 39-2 at 56, 61.

### III.
### Discussion

Mr. Underwood argues that he suffered unconstitutional conditions of confinement in segregated housing from February 26, 2020, to March 5, 2020. The correctional defendants argue that the conditions Mr. Underwood suffered are insufficient to support an Eighth Amendment claim. And Aramark argues that it was not deliberately indifferent to Mr. Underwood's plight because it was unaware of his lack of access to a cup and spork.

**A. Eighth Amendment**

The Eighth Amendment's proscription against cruel and unusual punishment protects prisoners from the "unnecessary and wanton infliction of pain" by the state. *Hudson v. McMillian,* 503 U.S. 1, 5 (1992) (citation and internal quotations omitted). Pursuant to the Eighth Amendment, prison officials have the duty to provide humane conditions of confinement: "prison officials must ensure that inmates receive adequate food, clothing, shelter, and medical care, and must take reasonable measures to guarantee the safety of the inmates." *Farmer v. Brennan,* 511 U.S. 825, 832 (1994) (internal quotation omitted).

To succeed on a conditions-of-confinement claim under the Eighth Amendment, a plaintiff must demonstrate that 1) he was incarcerated under conditions that posed a substantial risk of

5

objectively serious harm, and 2) the defendants were deliberately indifferent to that risk, meaning they were aware of it but ignored it or failed "to take reasonable measures to abate it." *Townsend v. Cooper*, 759 F.3d 678, 687 (7th Cir. 2014); *Pyles v. Fahim*, 771 F.3d 403, 409 (7th Cir. 2014); *Townsend v. Fuchs,* 522 F.3d 765, 773 (7th Cir. 2008) (citing cases).

The objective showing requires "that the conditions are sufficiently serious—*i.e.*, that they deny the inmate the minimal civilized measure of life's necessities, creating an excessive risk to the inmate's health and safety." *Giles v. Godinez*, 914 F.3d 1040, 1051 (7th Cir. 2019) (internal quotation omitted). "According to the Supreme Court, … 'extreme deprivations are required to make out a conditions-of-confinement claim.'" *Id.* (quoting *Hudson*, 503 U.S. at 9). "If under contemporary standards the conditions cannot be said to be cruel and unusual, then they are not unconstitutional, and [t]o the extent that such conditions are restrictive and even harsh, they are part of the penalty that criminal offenders pay for their offenses against society." *Id.* (internal quotation omitted).

After showing the objective component, a plaintiff must next establish "a subjective showing of a defendant's culpable state of mind," and "the state of mind necessary to establish liability is deliberate indifference to the inmate's health or safety." *Id.* (internal quotation omitted). In addition, negligence or even gross negligence is not sufficient to support a § 1983 claim. *See Huber v. Anderson*, 909 F.3d 201, 208 (7th Cir. 2018).

1. **Aramark**

The undisputed evidence shows that Aramark was not aware that Mr. Underwood lacked a cup and spork in segregation, and that its employees could not have delivered those items to Mr. Underwood in segregation if they had been aware of the issue. Dkt. 39-1. Mr. Underwood attempts to rebut this by arguing that Mr. Miller is lying about Aramark's lack of awareness of his

6

situation. Dkt. 47 at 7. He bases his argument on the fact that he sent several request slips about the issue, but he does not know if Aramark received them. Dkt. 47 at 5-8, annotating deposition transcript, dkt. 39-2 at 56, 61. Mr. Underwood has presented no evidence other than his own speculation that Aramark received notice of his request slips. And he has no evidence that Aramark could have delivered utensils to him in segregation had an employee known about his lack of utensils. A party opposing summary judgment must "respond to the moving party's properly-supported motion by identifying specific, admissible evidence showing that there is a genuine dispute of material fact for trial." *Grant v. Trs. of Ind. Univ.*, 870 F.3d 562, 568 (7th Cir. 2017). Inferences supported only by "speculation or conjecture" will not suffice. *Skiba v. Ill. Cent. R. R. Co.*, 884 F.3d 708, 721 (7th Cir. 2018). Because there is no dispute that Aramark did not know Mr. Underwood had no utensils and could not have delivered them to him in segregation, it is entitled to summary judgment. *Townsend*, 759 F.3d at 687 (to be deliberately indifferent, defendant must be aware of a risk and fail to "take reasonable measures to abate it.").

### 2. Correctional Defendants

The record shows that Mr. Underwood was subjected to approximately five nights in a cold cell with no sheets or blankets in late February and early March. He had no soap or utensils to eat with. Thus, he was forced to eat with his hands without being able to wash them. The unsworn statements of the correctional defendants support Mr. Underwood's deposition testimony about the conditions he experienced, his repeated complaints to correctional defendants, and the timing of their eventual responses.

When evaluating a temperature claim, a court must examine multiple factors including: the severity of the cold, its duration, whether the prisoner has alternative means to protect himself from the cold, and whether there are other uncomfortable conditions in addition to the cold. *Dixon*

7

*v. Godinez*, 114 F.3d 640, 644 (7th Cir. 1997). There is no evidence in the record regarding the actual temperature in Mr. Underwood's cell. But he testified that he was freezing, and it is undisputed that he had no extra clothing to put on or blankets to wrap himself in. The conditions lasted at least 5-6 days, when he received sheets and a blanket. In addition, he suffered from other uncomfortable conditions at the same time—a lack of access to basic hygiene products and eating utensils.

The correctional defendants do not dispute that Mr. Underwood was inadequately protected from the cold. Instead, they argue that the conditions didn't violate his constitutional rights because he did not seek medical attention for any cold-related illness in the weeks following the incident. Dkt. 46 at 6-7. But the Seventh Circuit has noted that excessive cold can "amount to an Eighth Amendment violation, even if the prisoner has not yet come down with the flu." *Gray v. Hardy*, 826 F.3d 1000, 1006 (7th Cir. 2016).

As for Mr. Underwood's lack of access to hygiene products, the correctional defendants rely on a 1988 Seventh Circuit case to argue that the denial of toothpaste for more than a week does not amount to a constitutional violation. Dkt. 46 at 6 (citing *Harris v. Fleming*, 839 F.2d 1232, 1234 (7th Cir. 1988)). But they fail to acknowledge more recent caselaw holding that "dental care is a basic human need" and that it would be unconstitutional to deny inmates oral hygiene products. *Board v. Farnham*, 394 F.3d 469, 484 (7th Cir. 2005) (denying qualified immunity for lack of toothpaste for three and a half weeks). The same is true for soap. *Gray*, 826 F.3d at 1006 ("[H]ygienic supplies sufficient to meet basic needs are constitutionally required."). This is particularly so when the person lacking access to soap also lacks access to eating utensils. *Id*. at 1005-6 (reversing summary judgment for warden because the combination of the alleged conditions could violate the Eighth Amendment even if they did not when evaluated individually).

8

Similarly, although the Seventh Circuit has held that receiving one shower per week is not a constitutional violation, a jury could consider Mr. Underwood's lack of access to a shower with soap, a razor, and other hygienic supplies for a week when determining whether his conditions, as a whole, were unconstitutional. *See Myrick v. Anglin*, 496 F. App'x 670, 675 (7th Cir. 2012) (weekly showers do not violate the Constitution); *Gray*, 826 F.3d at 1005-6 (reversing summary judgment for warden because the combination of the alleged conditions could violate the Eighth Amendment even if they did not when evaluated individually).

In conclusion, a reasonable juror could conclude that the combination of conditions Mr. Underwood experienced for at least five days—a cold cell with no bedding or extra clothes to keep warm, no soap to wash his hands, and no utensils to eat with—denied him a "minimal civilized measure of life's necessities" and that the defendants were aware of and ignored this deprivation. *Giles*, 914 F.3d at 1051. Therefore, the correctional defendants are not entitled to summary judgment on this claim.

**B. Qualified Immunity**

The correctional defendants argue that they are entitled to judgment as a matter of law based on qualified immunity. "Qualified immunity attaches when an official's conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (citation omitted) (internal quotation marks omitted). "[T]wo central questions must be addressed in the course of determining whether qualified immunity is available: whether the plaintiff has alleged a deprivation of a constitutional right at all, and whether the right at issue was clearly established at the time and under the circumstances presented." *Bianchi v. McQueen*, 818 F.3d 309, 319 (7th Cir. 2016) (citation omitted).

To make a qualified immunity determination, the Court must "(1) determine whether the plaintiff has alleged the deprivation of an actual constitutional right and (2) if so, determine whether that right was clearly established at the time of the alleged violation." *Sparing v. Village of Olympia Fields,* 266 F.3d 685, 688 (7th Cir. 2001) (*citing Saucier v. Katz*, 533 U.S. 194 (2001) (citations omitted)). Once raised, the plaintiff, not the defendant, carries the burden of overcoming the affirmative defense. *Sparing*, 266 F.3d at 688 (*citing Spiegel v. Cortese*, 196 F. 3d 717 (7th Cir. 1999)*.* In *Pearson v. Callahan*, 555 U.S. 223, 236 (2009), the Supreme Court "held that courts may grant qualified immunity on the ground that a purported right was not 'clearly established' by prior case law, without resolving the often more difficult question whether the purported right exists at all." *Id.* at 227 (citing *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

This Court's analysis must follow the Supreme Court's rulings. As the Court has explained, "A clearly established right is one that is sufficiently clear that every reasonable official would have understood that what he is doing violates that right. . . . Put simply, qualified immunity protects all but the plainly incompetent or those who knowingly violate the law." *Mullenix v. Luna*, 577 U.S. 7, 11−12 (2015) (cleaned up). Courts cannot define "clearly established law at a high level of generality" but rather must assess "whether the violative nature of *particular* conduct is clearly established." *Id.* (cleaned up). The doctrine of qualified immunity "gives government officials breathing room to make reasonable but mistaken judgments[.]" *Carroll v. Carman*, 574 U.S. 13, 17 (2014).

The Court has already determined that a reasonable juror could find that Mr. Underwood's conditions of confinement violated the Eighth Amendment.

So, the Court must determine whether that right was clearly established in February 2020, when the alleged violation occurred. In 2016, the Seventh Circuit held that "hygienic supplies

10

sufficient to meet basic needs are constitutionally required." *Gray*, 826 F.3d at 1006. In that case, the court also determined that various conditions that might not violate the Eighth Amendment alone, may do so in combination. *Id*. at 1005-6 (reversing summary judgment for warden because the combination of the alleged conditions could violate the Eighth Amendment even if they did not when evaluated individually).

Mr. Underwood's cell may not have been extremely cold for the entire duration of his stay in segregation. And a lack of spork may not have violated his Eighth Amendment rights if he had the means to properly clean his hands before eating. But the denial of soap was clearly a constitutional violation, and the lack of utensils and means to keep warm in winter further contributed to his unconstitutional conditions.

Because it was clearly established by 2020 that inmates had a right to soap and that their conditions should be evaluated as a whole, and because a genuine issue of fact remains as to whether the correctional defendants took reasonable steps to provide Mr. Underwood constitutional conditions, summary judgment on the grounds of qualified immunity is not appropriate. *Isby v. Brown*, 856 F.3d 508, 530 (7th Cir. 2017). Accordingly, the correctional defendants are not entitled to judgment as a matter of law based on qualified immunity.

## IV.
## Conclusion

Aramark's motion for summary judgment, dkt. [38], is **granted**. The **clerk is directed** to terminate Aramark as a defendant on the docket. No partial final judgment shall issue at this time. The correctional defendants' motion for summary judgment, dkt. [44], is **denied**.

Because it is the Court's preference that the plaintiff be represented by counsel for trial or any potential settlement conference, the Court will attempt to recruit counsel to represent the plaintiff. The plaintiff shall have **through March 3, 2023,** in which to file a motion for recruitment of counsel or

object to the recruitment of counsel on his behalf. **The clerk is directed** to include the motion for counsel form with the plaintiff's copy of this Order. After counsel has been recruited for the plaintiff, the magistrate judge is asked to hold a settlement conference.

   **IT IS SO ORDERED.**

Date: 2/3/2023

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution:

CHRISTOPHER UNDERWOOD
863907
PENDLETON - CF
PENDLETON CORRECTIONAL FACILITY
Electronic Service Participant – Court Only

Christopher Douglas Cody
HUME SMITH GEDDES GREEN & SIMMONS
ccody@humesmith.com

Julie Tront
Office of Indiana Attorney General
julie.tront@atg.in.gov


Magistrate Judge Tim A. Baker